**TRADERS & GENERAL INS. CO. v. O'QUINN et al.**

No. 5178.

Court of Civil Appeals of Texas. Texarkana.

Dec. 16, 1937.

860

Lightfoot, Robertson, Saunders & Gano, of Fort Worth, Stinchcomb, Kenley & Sharp, of Longview, Collins & Collins, of Lufkin, and Claude Williams, of Fort Worth, for appellant.

C. J. Shaeffer, Geo. W. McHam, and Roy W. McDonald, all of Dallas, for appellees.

WILLIAMS, Justice.

Appellant instituted this action to set aside an award by the Industrial Accident Board to Gloria J. and Robert L. O'Quinn, minors and exclusive beneficiaries, on account of injuries received March 28, 1934, resulting in the death of their father, Robert Lee O'Quinn, while in the course of employment of Albert Rast, a subscriber under the Texas Workmen's Compensation Act. Vernon's Ann.Civ.St. art. 8306 et seq. The deceased was a rig builder by trade and was engaged in that type of work for said Rast at the time he was injured which resulted in his death as found by the jury. He had been in the employ of Rast only a short time, but had worked in different oil fields over Texas for years at this trade or character of work. Appellant concedes under its fourteenth and fifteenth propositions that the evidence affirmatively shows that the deceased, at the time of his injury, was engaged in a work which was irregular and intermittent in its character, and that the deceased and the other employees engaged in the same or similar employment, in the same or a neighboring place, worked substantially less than 300 days per year. This record so supports the foregoing. Necessarily, then, the basis for computing the average weekly wage of the deceased is controlled by first subsection 3 of section 1, article 8309, R.C.S. of Texas. This judgment awarding claimants $20 a

week for 360 weeks is grounded upon this subsection. The jury answered $35 to special issue No. 6, which reads: "What sum of money, if any, do you find from a preponderance of the evidence, computed in a manner you deem just and fair to both parties, plaintiff and defendant, was the average weekly wage of Robert O'Quinn during the year from March 28, 1933, to March 28, 1934?" Appellant contends that the average weekly wage should have been computed as 1/52 of his annual earnings for the year immediately preceding the date of his injury, such method being the only fair and just method of computing his wages in such a case, and that since there was no testimony as to the actual earnings of the deceased for the year immediately preceding the date of his injuries, there was no basis for the rendition for any judgment against appellant.

Should the average weekly wage of this employee under subsection 3 have been computed as 1/52 of his actual annual earnings for the year immediately preceding? This subsection 3 provides it shall be computed by the board in any manner which may seem just and fair to both parties. Upon this point we quote from the opinion by the Commission of Appeals, adopted by the Supreme Court in Traders & General Ins. Co. v. Bulis, 104 S.W.2d 488, 490, to wit: "A reading of this subdivision will disclose that it is very general in its provisions as to what shall be taken into consideration by the board in computing the average weekly wage thereunder. It simply provides that the average weekly wage thereunder 'shall be computed by the Board in any manner which may seem just and fair to both parties.' Under such provision no hard and fast rule can be announced that will govern the board in all instances. The statute clearly intends to clothe the board with broad discretionary powers in considering matters that bear on the question to be determined. The board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier." What has been quoted is likewise applicable in a trial de novo on an appeal from an award made by the board. From an examination of the holdings in Fidelity Union Casualty Co. v. Carey, Tex.Com.App., 55 S.W.2d 795; Traders & General Ins. Co. v. Bulis, su-

pra; Texas Employers Ins. Ass'n v. Hamilton, Tex.Civ.App., 95 S.W.2d 767, and decisions therein discussed, we conclude that the risk assumed by the compensation insurance carrier is 'not one of indemnity against loss of income, but against loss of capacity to work. The deceased was receiving $10 a day for his services as a rig builder at the time he received his injuries. There is testimony in this record to the effect that he had worked five days a week for the six months' period prior to his injury; also for the year immediately preceding his injury he had worked as much as 200 days and perhaps longer as a rig builder; that he had received as wages $8 a day for twenty or twenty-five days and $10 a day for the remainder of the time. The jury's finding of $35 a week is within the figures of 1/52 of the total of the above-mentioned period of time at above wages. No harm is shown. The injured party is dead, and to require these claimants, minor children, to produce a tabulated account of the deceased's earnings for the preceding year would be unfair. It would be an exception rather than the rule for a laboring man to keep an account of his annual earnings from his labor. Subsection 3, supra, provides the average weekly wage shall be *computed* by the board *in any manner* which may seem *just and fair* to both parties. So we conclude that unless the manner used is unjust and unfair, the board and trial court being vested with broad discretionary powers, the appellate court will not disturb the method used.

■ Appellant contends that appellees failed to prove that appellant had issued a policy of workman's compensation insurance to said Rast, employer, and that same was in force at the time of the alleged injuries on March 28, 1934. Appellees introduced in evidence and read to the jury a certified copy of a notice from said Rast to the Industrial Accident Board that he had become a subscriber and that Traders & General Insurance Company was the carrier; policy effective August 24, 1932, and expiration date August 24, 1933. Appellees then introduced in evidence certified copy of the renewal of compensation insurance as filed with said board which showed that above insurance had been renewed for another year with its expiration date as of August 24, 1934. And likewise by successive steps appellees introduced in evidence a certified copy of notice of fatal injury addressed to appellant and Albert

Rast, employer; claim for compensation for death; the award, final ruling, and decision; and notice of intention to appeal given by appellant. After the foregoing instruments had been introduced in evidence in the manner above detailed, in response to a query by counsel for appellant if they had been introduced for jurisdictional purposes, appellees' counsel replied in the affirmative. We are of the opinion that both these gentlemen had reference to those instruments required to be introduced for jurisdictional purposes. The notice of intention to become a subscriber, and the notice of renewal of compensation are not items necessary to show jurisdiction. Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084. The notice of intention to become a subscriber had been read to the jury. Appellant's counsel had stated in open court that the policy in question was with Mr. Rast when called upon to produce same. And accordingly we hold that the notice of intention to become a subscriber and the notice of this renewal insurance were introduced in evidence to show liability.

■ Albert Rast, the alleged employer, immediately after the accident conveyed O'Quinn to Dr. McKean's Hospital. This physician testified about his medical treatment and examination of O'Quinn; that he was the regular physician for appellant in that territory; and in June, 1934, furnished appellant a general history of the matter when the claim arose. Appellant introduced a certified copy of the award of the board without restricting it for any purpose. This award recited that appellant was the insurance carrier at the date of this accident. The notice of intention to become a subscriber and the notice of the renewal of this compensation insurance declared that appellant was the insurance carrier. This evidence leads to but one reasonable conclusion—that appellant was the insurance carrier. As to whether this company had issued such a policy with its renewal was a matter within its knowledge, and it offered in evidence no fact or circumstance which refuted this fact. Section 5, article 8307, R.C.S. of Texas, as amended, Vernon's Ann.Civ.St. art. 8307, § 5; Traders & General Ins. Co. v. Lincecum, Tex.Civ.App., 81 S.W.2d 549, 550; Maryland Casualty Co. v. Donnelly, Tex. Civ.App., 50 S.W.2d 388; Texas Employers' Ins. Ass'n v. Arnold, Tex.Civ.App., 57 S.W.2d 954; Maryland Casualty Co. v.

Frizzell, Tex.Civ.App., 58 S.W.2d 135; Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464.

The court in the judgment expressly found that appellant was the insurance carrier. It is contended that this was an issue for the jury to determine. In the language of Chief Justice Johnson, Traders & General Ins. Co. v. Lincecum, supra: "In cases, as here presented, where an issue of fact material to plaintiff's cause of action is pleaded in the petition and denied in the answer, and where the evidence introduced to establish the fact is undisputed and is of such nature that reasonable minds could not differ in the conclusion to be drawn therefrom, its submission to a jury is unnecessary, and the trial judge may apply the law to the facts thus established." Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780, and authorities therein cited.

As we view this record, the evidence is undisputed that this man received his injuries while in the course of employment of Albert Rast. The burden of proof on the various issues were properly placed by the court. All other assignments not herein discussed are overruled.

The judgment is affirmed.